UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **VS.** § | **MISCELLANEOUS ACTION** |
| § | **NO. 4:17-MC-2553** |
| § | |
| **SAMIR KHOURY** | |

## MEMORANDUM & ORDER

Pending before the Court is the Motion of Samir Khoury to Unseal and Dismiss the Indictment for Violation of His Right to a Speedy Trial, or as Time-Barred ("Motion").[1] The procedural posture of this case merits analysis. In particular, Mr. Khoury believes that he is the subject of a sealed indictment, and he moves to unseal and dismiss that indictment, without knowing for certain that it exists. The Government, without acknowledging that Mr. Khoury is the subject of an indictment, opposes his request.

### I.   FACTUAL BACKGROUND[2]

The movant and purported defendant, Mr. Khoury, is a naturalized U.S. citizen from Lebanon. (Doc. No. 4-2 at 5.) He worked for Kellogg Brown & Root, LLC ("KBR") in the Middle East from 1977 through 1988. (*Id.*) At KBR, Mr. Khoury reported directly to Jack Stanley. (*Id.*) After 1988, he continued to work as a consultant for KBR on Liquefied Natural

---

[1] The Motion appears with redactions at Docket Number 1, and without redactions at Docket Number 4-2. The Court has previously ordered the redacted version unsealed, upon Mr. Khoury's unopposed motion to do so. (Doc. No. 12.) Citations to the Motion in this Memorandum & Order will be to the unredacted version.

[2] The factual recitations in this section are as set out in the parties' briefs. Many of them are derived from Mr. Khoury's Motion. In the Government's response brief, the Government acknowledges the facts as alleged by Mr. Khoury and does not controvert them. This section also incorporates factual allegations that were first offered by the Government and were not contested in Mr. Khoury's reply brief.

1

Gas ("LNG") projects in the Middle East, Africa, and the Far East. (*Id*.) Mr. Khoury currently lives in Lebanon and has traveled to the U.S. only once since 2004—in 2006 to meet with prosecutors. (*Id*. at 5-6.) The U.S. and Lebanon do not have an extradition treaty. (Doc. No. 13 at 3.)

Starting in 2004, the DOJ investigated alleged Foreign Corrupt Practices Act ("FCPA") violations committed by a joint venture formed in 1991 to bid on contracts for construction of LNG facilities on Bonny Island in Nigeria. (Doc. No. 4-2 at 4.) One of the four entities in the joint venture was KBR. (*Id*. at 4-5.)

In September 2008, Mr. Stanley, the former CEO of KBR, pleaded guilty to one count of conspiracy to violate the FCPA in connection with the Bonny Island LNG project.[3] (*Id*. at 6.) Mr. Stanley also pleaded guilty to a second charge of conspiracy to commit mail and wire fraud in connection with kickbacks allegedly paid to Mr. Stanley by an unindicted "LNG Consultant" on the Bonny Island project and other LNG projects in Malaysia. (*Id*.) The LNG Consultant was identified in court filings as all of the following: "a citizen of the United States and of Lebanon;" a "salesperson employed by EPC Contractor A [who was later identified] responsible for LNG and other projects in the Middle East" from "in or about 1977, until in or about 1988;" a person who resigned in 1988 and became a consultant; and a consultant who was awarded a contract by KBR in Malaysia. (*Id*. at 6-7.) Additionally, during Mr. Stanley's plea hearing, the LNG Consultant was referred to by prosecutors as "a dual U.S. and foreign national" and a "potential defendant." (*Id*. at 7.) At the time, the prosecutor declined this Court's invitation to seal the record. (*Id*.) Additional KBR agents on the Bonny Island project and other partners from the

---

[3] *United States v. Albert J. Stanley*, Crim. No. H-08-597 (S.D. Tex. Sept. 3, 2008). The plea agreement is at Docket Number 9. Transcripts of the two hearings referenced in this paragraph can be found at Docket Numbers 25 and 46.

joint venture pleaded guilty to FCPA violations between 2009 and 2011. (*Id*. at 8-9.) At Mr. Stanley's sentencing, in February 2012, the prosecutor stated that Mr. Stanley was "involve[d] in a very substantial kickback scheme with another consultant in which he stole upwards of $11 million from KBR." (*See id*. at 8.)

Mr. Khoury believes that the Government's description of the "LNG Consultant" in its public filings "identified Mr. Khoury in all respects except by name." (*Id*. at 6.)

## II.     PREVIOUS LITIGATION

In December 2014, Mr. Khoury moved for the unsealing and dismissal of an indictment that he believed to be pending against him. *United States v. Samir Khoury*, Misc. No. 4:14-mc-2884 (Dec. 12, 2014) (sealed) ("*Khoury 1*"). This Court denied Mr. Khoury's motion and ruled that the Government was not required to provide any sealed indictment to counsel for the defendant. (*Khoury 1* at Doc. No. 16.) Mr. Khoury appealed. The Fifth Circuit granted the Government's motion to dismiss Mr. Khoury's appeal. (*See Khoury 1* at Doc. No. 25.)

In August 2015, under the name "John Doe," Mr. Khoury filed a complaint seeking declaratory relief and expungement from this Court's records the Government's public accusations against him in filings in Mr. Stanley's criminal case. *Doe v. United States*, No. H-15-2414 (Aug. 20, 2015). Mr. Khoury made Fifth Amendment due process arguments based on *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), which held that persons who were charged with criminal conduct by a grand jury but not indicted had been denied due process. The court granted the Government's motion to dismiss on statute of limitations grounds, ruling that Doe's *Briggs* claim accrued in 2008, when the Government had allegedly accused him as a criminal co-conspirator in Mr. Stanley's case. *Doe v. United States*, 197 F.Supp.3d 933, 938-39 (S.D. Tex. 2016). The Fifth Circuit affirmed. *Doe v. United States*, 853 F.3d 792 (5th Cir. 2017).

### III.     PARTIES' ARGUMENTS

Mr. Khoury believes that he is the subject of a sealed indictment[4] dating from February 2009. He argues that the details provided about the "LNG Consultant" in Mr. Stanley's public criminal proceedings amount to a public accusation of him. Mr. Khoury argues that the Government's public accusations and refusal to publicly indict or strike the accusations is a "form of extra-judicial punishment." (Doc. No. 4-2 at 13.) While the indictment is sealed, Mr. Khoury cannot confront the accusations the Government has allegedly made in the indictment, which he argues is a violation of the Fifth Amendment. Mr. Khoury argues that the Court has a continuing obligation to review the grounds for sealing judicial records and that none of the traditional factors justifying the sealing of indictments is present. Therefore, he argues that it must be unsealed. Due to the length of time that the indictment has been pending, Mr. Khoury contends that he has been denied his right to a speedy trial in violation of the Sixth Amendment and the statute of limitations bars the indictment. Thus, once unsealed, Mr. Khoury argues that the Court must dismiss the indictment.

In response, the Government first argues that Mr. Khoury's claims are barred by issue preclusion and law-of-the-case doctrine. Second, the Government argues that there is no legal basis for the Court to unseal or disclose the existence of an indictment. The Government further contends that the Court lacks jurisdiction to disclose any possible indictment because Mr. Khoury has not submitted to the Court's jurisdiction and the fugitive disentitlement doctrine should apply. The Government's position is that the appropriate time for Mr. Khoury to challenge a sealed indictment is after the indictment is unsealed.

---

[4] The Government has not conceded that a sealed indictment exists, and Mr. Khoury cannot definitively prove there is a sealed indictment. Nothing contained in this Memorandum and Order should be understood as resolving the issue.

## IV. DISCUSSION

### a. Issue Preclusion and Law-of-the-Case Doctrine

Issue preclusion applies when the following elements are met:

(1) [T]he issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995). The party asserting issue preclusion bears the burden of proof. *Matter of King*, 103 F.3d 17, 19 (5th Cir. 1997).

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented,* 466 U.S. 144, 104 (1984). "Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Id.* at 619 n.8. However, if an issue of law was decided on appeal, it may not be reexamined on remand. *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004).

The passage of time is critical to Mr. Khoury's merits arguments. This is not a duplicate challenge because the approximately three years that have passed since *Khoury 1* accounts for a sufficient change in the circumstances for the Court to revisit the issues. *See United States v. Neighbors*, 22 F.Supp.3d 1158, 1162 (D. Kan. 2014) (re-examining speedy trial analysis on a motion to dismiss two-and-a-half years after denying an earlier motion to dismiss based on a speedy trial analysis).

### b. Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine limits a criminal defendant's access to the judicial system whose authority he evades. *See Bagwell v. Dretke*, 376 F.3d 408, 410 (5th Cir. 2004).

5

The fugitive disentitlement doctrine most often operates to allow courts to decline to adjudicate the appeals of defendants who have been convicted and have absconded. *See, e.g.*, *United States v. Lanier*, 123 F.3d 945 (6th Cir. 1997). Disentitlement is a "most severe" sanction. *Degen v. United States*, 517 U.S. 820, 828 (1996).

In *Degen*, a criminal defendant facing federal drug charges was outside of the United States and could not be extradited. In addition to the criminal charges, a civil forfeiture action was brought against the defendant. The Supreme Court declined to apply the fugitive disentitlement doctrine to prevent the defendant from putting on a defense in the civil suit. *Degen*, 517 U.S. 820 at 829.

Mr. Khoury is living in a country from which he cannot be extradited. However, he has not absconded from custody, and without a public indictment, there is no instruction on how he could submit to custody. Citizens are not fugitives by virtue of residing in another country. The Government is trying to use supposed charges against Mr. Khoury as a sword at the same time it uses the lack of knowledge of the existence of charges as a shield. The Court does not wish to extend the sparingly used fugitive disentitlement doctrine to these circumstances.

### c. Authority to Unseal

An indictment may be sealed until the defendant is in custody or has been released pending trial. Fed. R. Crim. P. 6(e)(4). One purpose of Rule 6(e)(4) is to "prevent the requirement of an indictment from serving as a public notice that would enable the defendant to avoid arrest." *United States v. Muse*, 633 F.2d 1041, 1043-44 (2d Cir. 1980). In the "rare circumstances" where that purpose is squandered, at least one court has ordered the indictment unsealed. Order Granting Defendant's Motion to Unseal Document at 2, *United State v. Desernia*, No. 1:03-cr-00331-JRA (N.D. Ohio Sept. 22, 2017), ECF No. 15. That court wrote that

where the defendant knows of the indictment, there may be "no continuing purpose for the indictment [] to remain sealed" and "a seal does not prevent him from avoiding arrest." *Id*.

Moreover, courts have both continuing oversight of sealed grand jury materials, Fed. R. Crim. P. 6(e)(3)(E)(i) ("The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter preliminarily to or in connection with a judicial proceeding."), and broad authority over the sealing and unsealing of judicial records, *United States v. Sealed Search Warrants*, 868 F.3d 385 (5th Cir. 2017) (discussing a qualified common law right to access of judicial records).

Accordingly, this Court considers whether the reasons for sealing an indictment apply here. Reasons for sealing an indictment include: (1) to prevent a broader, ongoing investigation from being compromised; (2) to protect an informant or witness; (3) to prevent the defendant from having notice of the charges and opportunity to flee. *United States v. Gigante*, 436 F.Supp.2d 647 (S.D.N.Y. 2006). Here, the investigation began in 2004 and the conduct at issue occurred a decade before that. Others involved in the investigation have been charged, pleaded guilty, sentenced, and at least some of them have completed their sentences. This is one of those "rare circumstances" where Mr. Khoury has knowledge of public accusations against him because of the personal details about him in Mr. Stanley's case, so there can be no preventing him from having notice. He reasonably believes there is an indictment against him, which has been sealed for approximately nine years. The Government knows exactly where he is.

### d. Challenges to an Indictment

A few circuits have stated that an indictment may not be challenged until after it is unsealed, but those statements do not disturb the Court's ability to unseal an indictment. In *United States v. Sharpe*, the Fifth Circuit explained sealed indictments could be challenged after

being unsealed: "If challenged, the government must explain and support the legitimacy of its reasons for sealing the indictment. The government only does so, however, at a hearing *after* the indictment is unsealed." 995 F.2d 49, 52 (5th Cir. 1993). In *Sharpe*, the temporal ordering was not the key issue in the case. Instead, the "sole issue discuss[ed]" was "whether an indictment sealed within the statutory period of limitations but unsealed after that time period has expired tolls the statute of limitations." 995 F.2d at 52. There, the indictments were sealed for "a mere six days." *Id*. at 51.

This temporal ordering—first unseal, then challenge the legitimacy of sealing—is applied in other circuits, as well. *United States v. Lakin*, 875 F.2d 168, 171 (8th Cir. 1989); *United States v. Srulowitz*, 819 F.2d 37, 41 (2d Cir. 1987). Those cases, too, are distinguishable from the present case. They do not contemplate an indictment remaining sealed for a multi-year period. *See Lakin*, 875 F.2d at 171 (stating, "[a] defendant's right to challenge the propriety of the sealing is fully protected by affording him the right to a hearing *after* the indictment is opened to public inspection," where the indictment was sealed for 93 days); *Srulowitz*, 819 F.2d at 41 (indictment sealed for two months).

Relying on *Sharpe*, the Government did not counter Mr. Khoury's Sixth Amendment and statute of limitations challenges to the indictment. Without a response from the Government, it is difficult to assess the merits of those challenges. The Court would benefit from full briefing on Mr. Khoury's challenges to the indictment.

V. **CONCLUSION**

For the reasons set forth, the Court will agree to review, in camera, any evidence that the Government wishes to adduce in opposition to Mr. Khoury's Motion to Unseal. The Government shall have twenty days to make available such evidence.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 11th day of June, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE